**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Allen Albert FECHT,
Defendant-Appellant.**

**No. 84CA0375.**

Colorado Court of Appeals,
Div. I.

April 11, 1985.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.*, Art. VI, Sec. 5(3),   and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Michael F. Scott, P.C., Michael F. Scott, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Allen Albert Fecht, appeals from the judgment of conviction entered on a jury verdict finding him guilty of four counts of fraud by check. We affirm.

## I.

Although the trial court permitted defendant full leeway in admitting evidence concerning his efforts to make restitution to the victims and as to his allegation that local law enforcement authorities interfered with these efforts, he contends that the trial court committed reversible error in failing to give his tendered instructions dealing with these matters to the jury. We disagree.

■ It is the defendant's state of mind at the time of the issuance of a check which is determinative of his criminal liability for fraud by check, not his state of mind at some time subsequent to the completion of the transaction. *People v. Taylor*, 655 P.2d 382 (Colo.1982). Thus, the making of restitution in order to compensate a victim for a loss caused by the defendant's past conduct is not a defense to a criminal charge based upon that conduct. *People v. Taylor, supra.* While restitution, or the offer of restitution, does not necessarily negate the existence of a wrongful intent, *see People v. Am. Health Care*, 42 Colo. App. 209, 591 P.2d 1343 (1979), the defendant's conduct subsequent to the transaction may be relevant to the issue of intent. CRE 403.

■ Here, defendant's tendered instructions 1, 4, and 5 deal with alleged interference by the Colorado Springs police department and the El Paso County sheriff's department with his efforts to make restitution on the checks. Instructions 4 and 5 informed the jury that if it found that these agencies prevented restitution or interfered with defendant's efforts to make restitution, defendant was to be found not guilty. These instructions were improper because they advised the jury that defendant's specific intent is negated as a matter of law by such conduct. *See People v. Taylor, supra.*

Proposed instruction 1 would have advised the jury that it could consider interference by the agencies with defendant's efforts to make restitution as evidence of his lack of specific intent to defraud. This instruction was improper because it is defendant's conduct and intent which is relevant to the charge, not that of a law enforcement agency.

Defendant's tendered instruction 3 would have informed the jury that if it found that any complaining witness agreed to accept restitution from defendant, defendant must

be found not guilty. Instruction 6 states that if the jury finds that any complaining witness agreed to accept interest on the amount of the check, it was to find the defendant not guilty. Again, these instructions are improper because the making of restitution is not a defense to the charge of fraud by check. *See People v. Taylor, supra.* Instruction 7, which advises the jury that it may consider the length of time during which the complaining witnesses failed to present their checks to law enforcement agencies, is improper for the same reason that tendered instruction 1 is improper.

■ Defendant's tendered instruction 2 informed the jury that it could consider his offers of restitution as to whether he had the specific intent to defraud.

The trial court instead instructed the jury that:

"If specific intent to defraud existed at the time of writing the check, criminal liability is not negated solely because the defendant made later attempts to repay the check in part or in full."

In addition, the trial court gave instructions defining the elements of fraud by check and the terms relevant thereto, *see* § 18–5–205, C.R.S. (1984 Cum.Supp.), together with a separate joint operation instruction.

We conclude that while it may have been appropriate to give defendant's tendered instruction 2, the instructions given, when considered as a whole adequately informed the jury as to how specific intent should be determined, the absence of which was defendant's theory of defense. *See People v. Deadmond*, 683 P.2d 763 (Colo.1984). And, in view of the overwhelming evidence of defendant's guilt, and the full presentation of and argument on the evidence in support of defendant's theory, any error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

## II.

Defendant also argues that the trial court erred in failing to grant his motions for judgment of acquittal. We disagree.

■ Defendant's motions for judgment of acquittal were premised upon the argument that his subsequent efforts to make restitution constituted a legal defense to the charge of fraud by check. *People v. Taylor, supra*, which holds that the making of restitution to compensate for losses suffered by a fraud by check victim is not a defense to that charge, is dispositive.

## III.

Defendant next asserts that the trial court erred by failing to sequester two witnesses listed by the People. Again, we disagree.

Prior to the commencement of the trial, the court invoked CRE 615 by ordering witnesses excluded from the courtroom. However, the trial court's sequestration order applied only to witnesses to be called in the parties' cases-in-chief. Defendant's request to sequester *all* witnesses was denied.

■ Defendant first argues that he was prejudiced by the presence in the courtroom of one witness, his former attorney who did not testify. However, there is nothing in the record which shows that the attorney was in fact in the courtroom, that if he was there the jurors knew his identity, or that he was in fact observed by jurors in conversation with prosecution witnesses. Thus, there is no indication in the record to support defendant's assertion that the presence, if any, of his former attorney was sufficiently prejudicial to require reversal. *See Martin v. Porak*, 638 P.2d 853 (Colo.App.1981). This claim of error rests on mere speculation. *See People v. Rael*, 199 Colo. 201, 612 P.2d 1095 (1980).

■ Defendant also argues that the trial court erred in limiting its CRE 615 sequestration order to witnesses to be called in the parties' cases-in-chief. He alleges that he was prejudiced by the testimony of the prosecution's known rebuttal witness who was allowed in the courtroom during the

parties' cases-in-chief. We hold that the trial court erred in not excluding this witness, *see United States v. Ell,* 718 F.2d 291 (9th Cir.1983), but conclude the error was harmless.

Sequestration is a matter of right. *Martin v. Porak, supra;* CRE 615. The policy reasons for the sequestration rule are to prevent a witness from conforming his testimony to that of another and to discourage fabrication and collusion. *Martin v. Porak, supra.* These policy reasons apply with equal force to known rebuttal witnesses. *See United States v. Ell, supra.*

However, the record does not substantiate that any fabrication or collusion took place. First, the record does not support defendant's allegation that the rebuttal witness conversed with any other witness. Second, the rebuttal witness' testimony concerned mostly collateral matters which supported defendant's theory of the case. And, on surrebuttal, defendant testified that he had no dispute with this rebuttal witness' testimony. Therefore, the error was harmless. *See Martin v. Porak, supra;* Crim.P. 52(a).

The judgment is affirmed.

PIERCE and SMITH, JJ., concur.